UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASHRAF MANIAR, <br><br> *Plaintiff*, <br><br> v. <br><br> CHAD WOLF,[1] Secretary of the U.S. Department of Homeland Security <br><br> *Defendant*. | Civil Action No. 18-1362 (RDM) |

## MEMORANDUM OPINION

Plaintiff Ashraf Maniar filed a petition for writ of mandamus and a complaint against the Department of Homeland Security, alleging that the Transportation Security Administration ("TSA")—a component of the Department—has failed to provide him with adequate notice and a meaningful opportunity to challenge his placement on the "No Fly List." Dkt. 23. The Department moves to dismiss both the petition and the complaint on the ground that this Court lacks jurisdiction and, in the alternative, moves to dismiss the complaint for failure to state a claim. Dkt. 24. Because the Court cannot resolve the Department's jurisdictional defense without additional evidence and briefing and cannot reach the Secretary's merits defense without first resolving the threshold jurisdictional issues, the Court will deny the motion to dismiss without prejudice.

---

[1] Acting Secretary Wolf is automatically substituted Kirstjen Nielsen as the Defendant pursuant to Fed. R. Civ. Pro. 25(d).

# I. BACKGROUND

## A. Factual Background

Plaintiff alleges that, on more than one occasion, he has been prevented from printing boarding passes and from boarding planes and has been escorted out of the airport. Dkt. 23 at 2 (Am. Compl. ¶ 3). He was also prohibited from traveling to Canada via ground transportation on March 15, 2018. *Id.* (Am. Compl. ¶ 4). According to Plaintiff, these difficulties when traveling are "consistent with" being "on the No Fly List."[2] *Id.* (Am. Compl. ¶ 3).

On February 20, 2018, Plaintiff initiated a redress inquiry through the Department of Homeland Security Traveler Redress Inquiry Program ("DHS TRIP") in order to find out whether he is on the No Fly List and, if so, the basis for his inclusion on that list. *Id.* (Am. Compl. ¶ 5). He also sought to appeal the decision to place him on the List, if he was in fact on it. *Id.* DHS TRIP confirmed that it received his application on February 26, 2018. *Id.* (Am. Compl. ¶ 6). On March 29, 2018, Plaintiff's counsel sought an update on the status of his inquiry and explained that, in light of the delay, "Plaintiff and his counsel have no choice but to deduce that Plaintiff's religion and/or national origin are the true motivators of [the Department of Homeland Security's] actions against him." *Id.* at 2–3 (Am. Compl. ¶¶ 7–8). DHS TRIP responded on March 30, 2018, explaining that Plaintiff's application was still "In Process." *Id.* at 3 (Am. Compl. ¶ 9).

---

[2] "The No Fly List is a small subset of the U.S. government Terrorist Screening Database (also known as the terrorist watchlist) that contains the identity of known or suspected terrorists." *DHS Traveler Redress Inquiry Program*, Transportation Security Administration, *available at* https://www.tsa.gov/travel/passenger-support/travel-redress-program (last accessed April 10, 2020). The Terrorist Screening Database is "maintained by the FBI's Terrorist Screening Center." *Id.*

On April 27, 2018, Plaintiff again wrote to the Department of Homeland Security ("DHS"), seeking an update regarding the status of his application. *Id.* (Am. Compl. ¶ 10). In that letter, Plaintiff wrote that, if he did not receive a substantive response from DHS after another month, he would file a petition for writ of mandamus. *Id.* (Am. Compl. ¶ 11). Receiving no response after a month, Plaintiff filed a petition for writ of mandamus on June 7, 2018, requesting that this Court "compel Defendant to provide an initial determination as to Plaintiff's status on the No Fly List, comply with its own stated regulations, respond in a timely manner moving forward with Plaintiff's [DHS] TRIP inquiry, and further requesting attorney's fees and costs." *Id.* at 3–4 (Am. Compl. ¶ 12).

On June 27, 2018, DHS TRIP sent Plaintiff a letter "confirming his placement on the No Fly List," but the letter "did not state the [particular] reasons for this placement and merely [recited] the published regulatory language." *Id.* at 4 (Am. Compl. ¶ 13). Plaintiff's counsel then contacted DHS and asserted that Plaintiff is "entitled to the specific criterion under which [he] has been placed on the No Fly List and . . . an unclassified summary of information supporting [his] No Fly List status, to the extent feasible." *Id.* (Am. Compl. ¶ 15) (citations omitted). On October 30, 2018, DHS TRIP provided Plaintiff with a letter confirming that he was "on the U.S. government's No Fly List due to, in part, [his] association and extensive communication with a known extremist located in the United Kingdom who has supported terrorist organizations." *Id.* (Am. Compl. ¶ 16). Plaintiff filed an administrative DHS TRIP appeal on December 31, 2018 and, as of the filing of his amended petition and complaint on April 18, 2019, he had not received a response. *Id.* at 5 (Am. Compl. ¶ 20).

B.   **Procedural History**

Plaintiff filed his original petition for writ of mandamus, which sought to compel Defendant to provide an initial determination as to whether or not Plaintiff is on the No Fly List, on June 7, 2018. Dkt. 1. Defendant moved to dismiss this initial petition on November 13, 2018, after DHS confirmed that Plaintiff was on the No Fly List and offered the unclassified summary of the basis for that designation. Dkt. 14. Plaintiff subsequently sought leave to file an amended petition for writ of mandamus and a complaint, Dkt. 18, which the Court granted, Minute Order (Apr. 18, 2019). The amended mandamus petition alleges that DHS TRIP failed to provide a "substantive, meaningful summary of the information which led to his placement on the No Fly List," that he has a clear right to relief, that DHS had a clear duty to act, and that no other adequate remedy is available to Plaintiff. Dkt. 23 at 5–6. His amended complaint, in turn, asserts a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, challenging DHS's failure "to timely respond to Plaintiff's DHS TRIP complaint and appeal" and failure "to provide Plaintiff with sufficient information to allow him the opportunity to meaningfully address any allegations against him that led to his continued placement on the No Fly List." *Id.* at 6–7.

The Department now moves (1) to dismiss Plaintiff's petition for a writ of mandamus for lack of jurisdiction, and (2) to dismiss his APA claim on the grounds that (a) Congress has provided an adequate alternative remedy, (b) DHS has yet to take any "final agency action," and (c) the determination of what information can be provided without jeopardizing national security is committed to agency discretion. Dkt. 24.

## II. ANALYSIS

Before addressing any of the parties' argument on the merits, the Court must assure itself that it has jurisdiction. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95–96 (1998). The jurisdictional questions posed by Plaintiffs mandamus petition and APA claim, moreover, overlap in one significant respect—both require the Court to consider whether Congress has provided those aggrieved by the No Fly List process with an alternative remedy.

The decision whether to grant a writ of mandamus involves a two-step inquiry. The Court must first decide whether the plaintiff has shown (1) that he has "a clear and indisputable right to relief," (2) that the agency "is violating a clear duty to act," and (3) "that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). Second, the Court must decide whether "compelling equitable" considerations warrant the "drastic" remedy of mandamus. *Id.* The first step is jurisdictional, and if the Court is not satisfied that each of the "three threshold requirements" are met, it "must dismiss the case for lack of jurisdiction." *Id.* Here, the Department argues that those jurisdictional requirements are not satisfied because Plaintiff has alternative administrative and judicial remedies and because the determination of what information can be released consistent with national security is far from "ministerial" or "non-discretionary." Dkt. 24-1 at 12–15.

Although less demanding, the APA-jurisdictional inquiry touches upon similar considerations. The APA is not a jurisdiction-conferring statute, but it does include a waiver of sovereign immunity, and sovereign immunity is a jurisdictional concept. *See Trudeau v. FTC*, 456 F.3d 178, 185–87 (D.C. Cir. 2006). The waiver of sovereign immunity contained in the APA includes the following proviso: "Nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."

5 U.S.C. § 702. This language "excludes from [the APA's] waiver of sovereign immunity . . . claims seeking relief expressly or impliedly forbidden by another statute." *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005) (quoting *Transohio Savings Bank v. OTS*, 967 F.2d 595, 607 (D.C. Cir. 1993)). Although another provision of the APA goes a step further, and bars relief if the plaintiff has an alternative, "adequate remedy in a court," 5 U.S.C. § 704, the D.C. Circuit has all but held that the alternative-adequate-remedy proviso is not jurisdictional, *see Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017) ("[I]t strains credulity to think the choice to address the adequate remedy bar not as a condition of immunity, but instead as a requirement for a cause of action, was not deliberate . . . ."). Accordingly, for present purposes, the Court addresses only the expressly-or-impliedly-forbidden limitation on the APA's waiver of sovereign immunity.

The overlapping jurisdictional questions posed by Plaintiff's mandamus petition and APA claim, then, are whether an "adequate alternative remedy" is available (mandamus) and whether the existence of any such alternative remedy "expressly or impliedly" precludes APA review. In the Department's view, the answer to both questions is yes. With respect to Plaintiff's mandamus petition, the Department observes that he "is currently in the midst of the multi-step administrative process provided by DHS TRIP to U.S. persons who have been denied airline boarding because of their presence on the No Fly List," and he had the option of either continuing "to pursue the DHS TRIP procedures . . . or . . . elect[ing] to allow the October 30, 2018 letter to become a final TSA order" and to seek judicial review pursuant to 49 U.S.C. § 46110. Dkt. 24-1 at 11. Because he "elected the former," the Department contends, his sole recourse is to see that process through and, if appropriate, seek judicial review of the final TSA determination under § 46110. *Id.* And, with respect to Plaintiff's APA claim, the Department

argues that § 46110 "provides for 'exclusive' jurisdiction in the Courts of Appeals to review orders issued 'in whole or in part' by TSA" and thus expressly (or at least impliedly) excludes Plaintiff's claim from the APA's waiver of sovereign immunity. *Id*. at 16.

The Department is correct that, where applicable, § 46110 vests the Courts of Appeals with exclusive jurisdiction to review orders issued by the TSA Administrator, 49 U.S.C. § 46110(a)–(c), thereby providing interested parties with an alternative remedy and excluding such claims from the APA's waiver of sovereign immunity. As the D.C. Circuit has explained, "although the 'normal default rule' may be that a challenge to agency action begins in the district court, . . . section 46110(a)'s direct-review provision removes the [covered agency orders] from the purview of the district court and places it within [the Court of Appeals'] exclusive jurisdiction." *Nat'l Fed. of the Blind v. U.S. Dep't of Transp.*, 827 F.3d 51, 57 (D.C. Cir. 2016). This formulation of the jurisdictional test, however, elides the more difficult question—that is, whether this action constitutes a challenge to "an order issued by . . . the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator . . . in whole or part under" 49 U.S.C. § 114(l) or (s). 49 U.S.C. § 46110(a).

The D.C. Circuit addressed a fact pattern much like this one in *Ege v. Department of Homeland Security*, 784 F.3d 791 (D.C. Cir. 2015). In that case, a pilot challenged his alleged inclusion on the No Fly List and sought "removal" from the list "or, at a minimum, a 'meaningful opportunity to be heard.'" *Id.* at 792. The D.C. Circuit dismissed his petition for lack of standing because "neither the TSA nor the Department of Homeland Security (DHS)—the only two respondent agencies—ha[d] 'authority to decide whose name goes on the No-Fly List'" *id.* (quoting *Latif v. Holder*, 686 F.3d 1122, 1129 (9th Cir. 2015), and because neither the

TSA nor DHS "'established the policies governing [the relevant portion of] the redress process," *id.* (quoting same). Those decisions were made, instead, by the Terrorist Screening Center ("TSC"), which is "administered by the Federal Bureau of Investigation (FBI)." *Id.* at 793. That presented a difficulty in *Ege* because the FBI was neither a party to case, *id.*, nor subject to the Court of Appeals' exclusive jurisdiction under § 46110, which applies only to orders issued by the Secretary of Transportation and certain orders issued by the TSA and Federal Aviation Administration Administrators, 49 U.S.C. § 46110(a). As the D.C. Circuit explained, "[t]he agencies whose actions are reviewable under section 46110 [had] no" authority to grant the relief requested, and thus the plaintiff lacked an injury that the Court of Appeals could redress. *Id*. at 797.

Here, the Department argues that *Ege* is not controlling, and that Plaintiff's challenge must be directed to the D.C. Circuit, because the procedures governing the maintenance of the No-Fly List and related grievance procedures have since changed, and the TSA Administrator now "conducts a meaningful review of the DHS TRIP file" at the conclusion of the process "and issues an order either maintaining the traveler on or removing the traveler from the No Fly List." *See* Dkt. 24-1 at 19. Although the Department points to two district court decisions that acknowledge that the procedures have changed, *id.* (citing *Mohamed v. Holder*, No. 1:11-cv-50, 2015 WL 4394958, at *13 (E.D. Va. Jul. 16, 2015), and *Latif v. Lynch*, No. 3:10-cv-750, 2016 WL 1239925, at *5 (D. Or. Mar. 28, 2016)), neither of those decisions addresses whether those changes have any bearing on *Ege*'s conclusion that the Courts of Appeals lack jurisdiction to consider a No-Fly-List challenge in the first instance.

The answer to that question turns on the nature and scope of the changes. All that the Department offers by way of support, however, is a document that it describes in a footnote as

follows: "[t]he Watchlisting Overview document, which was released by the U.S. Government in January 2018 following an inter-agency review process, provides an official, authorized description of watchlisting policies and procedures." Dkt. 24-1 at 6 n.1. Although courts "may take judicial notice of a "fact that is not subject to reasonable dispute," they may do so only if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 464 (D.C. Cir. 2018) (internal quotations and citations omitted). Here, the document is not on DHS letterhead, and it lacks any official insignia or markings. Dkt. 24-5. The Department does not indicate who (or which agency) authored the document or who approved it. Nor does the Department even offer a declaration confirming the vague description of the document that appears in the footnote. The Court, accordingly, is left to puzzle over who "authorized" the process, what makes the process "official," and whether the overview document has binding legal force.[3]

Moreover, even if the Court were to treat the overview document as the "official, authorized" description of the relevant process, as the Department urges in its footnote, that document does not address which government official makes the final decision with respect to an aggrieved traveler's request for additional information regarding his inclusion (or putative inclusion) on the No Fly List. *See* Dkt. 24-5 at 10. If the TSA Administrator makes that decision and that disclosure decision constitutes an "order" for purposes of 49 U.S.C. § 46110, then the Department is likely correct, and Plaintiff's challenge must be brought, if at all, in the Court of Appeals. But, if that decision is made by the TSC, for example, then this case—which

---

[3] The TSA regulations add little clarity and merely declare: "TSA, in consultation with the TSC and other appropriate Federal law enforcement or intelligence agencies, if necessary, will review all the documentation and information requested from the individual, correct any erroneous information, and provide the individual with a timely written response." 49 C.F.R. § 15601.201.

9

challenges the government's failure to provide the requested information—is, at least arguably, similar to and perhaps controlled by *Ege*. Likewise, to the extent Plaintiff challenges the adequacy of the process described in the overview document, it matters who "authorized" that process. If the process represents an "order" of the TSA Administrator, for example, it is likely subject to review in the Courts of Appeals under 49 U.S.C. § 46110—at least if the overview documents constitutes or reflects an "order" in the way a regulation would. *See Mokdad v. Lynch*, 804 F.3d 807, 811 (6th Cir. 2015).

Not only does the overview document leave these critical questions unanswered, the parties do not address them in their briefs. The Court, accordingly, is unable to determine on the existing record whether it has jurisdiction to consider Plaintiff's challenge. Without resolving that threshold question, moreover, the Court cannot consider the merits of Plaintiff's claims. The Court must, accordingly, deny the Department's motion to dismiss, Dkt. 24, without prejudice. The Department may renew its motion with a more complete showing regarding the regulatory backdrop, which addresses (1) whether the overview document constitutes a rule issued by the TSA Administrator pursuant to 49 U.S.C. §§ 114, 40113, 44901, 44903; (2) what agency or official made the decision regarding Plaintiff's request for additional information; (3) whether that decision is subject to review by the TSA Administrator; (4) whether the TSA Administrator will make the final decision regarding Plaintiff's challenge to his inclusion on the No Fly List; and (5) whether Plaintiff's request for additional information is intertwined with that final determination.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, Dkt. 24, is hereby **DENIED** without prejudice.

**SO ORDERED**.

<u>/s/ Randolph D. Moss</u>
RANDOLPH D. MOSS
United States District Judge

Date: April 10, 2020